IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-190-FL

| | | |
|---|---|---|
| PETER OKYERE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| JOHN BEAN TECHNOLOGIES | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the court on defendant's partial motion to dismiss (DE 7). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action on May 6, 2020, under the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") against defendant, plaintiff's former employer. Plaintiff claims that defendant retaliated against plaintiff for his exercise of FMLA rights ("Count I") and interfered with those rights ("Count II"); discriminated against plaintiff because of his disability ("Count III"); and retaliated against him for exercise of his ADA rights ("Count IV"), all of which resulted in his termination. Plaintiff seeks damages stemming from his termination.

On July 6, 2020, defendant filed the instant partial motion to dismiss, seeking dismissal of all claims except for plaintiff's claim of FMLA retaliation ("Count I"). Defendant relies upon plaintiff's charge and amended charge to the Equal Employment Opportunity Commission ("EEOC"). Plaintiff filed his response on July 27, 2020, to which defendant replied on August 10, 2020.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff was employed by defendant as a repair technician for over a year and a half, starting in April 2019 and ending October 1, 2020, with his termination. In May 2019, plaintiff suffered "bilateral quadriceps tendon ruptures." (Compl. ¶17). In June 2019, plaintiff contacted his manager and the human resources department regarding FMLA leave and, after providing the relevant information and documents, was approved for such.

Plaintiff took his FMLA leave before visiting an orthopedic doctor in September 2019, who recommended that plaintiff return to work with light duty restrictions. Thereafter, plaintiff contacted defendant's human resources department to notify them of his ability to return to work with restrictions and requested accommodation for light duty work. Plaintiff alleges that he did not hear anything back from defendant, which caused plaintiff, in October 2019, to contact defendant regarding disability benefits. At this time, plaintiff was informed that defendant had lost its contract with the Raleigh-Durham International Airport ("RDU") and that employees were being transferred to other job sites. This caused plaintiff to again contact the human resources department about returning to work, but plaintiff heard nothing before being terminated effective October 1, 2019. Plaintiff alleges that other similarly situated non-disabled employees, who had not exercised their FMLA rights, were informed of the end of defendant's contract with RDU and

given the option to transfer to other locations. These employees were also informed on how to apply for a position with the new contract holder that was replacing defendant at RDU.

Plaintiff filed a claim with the EEOC on December 13, 2019, and an amended claim on December 17, 2019, alleging discrimination on the basis of disability and retaliation. About two months later, on February 13, 2020, the EEOC issued a dismissal and notice of rights to plaintiff, who then brought the instant suit on May 6, 2020.

## COURT'S DISCUSSION

A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted). "Although plaintiffs need not prove their prima facie case at the pleading stage, they must 'allege facts sufficient to state all the elements of [their] claim.'" Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th Cir. 2018) (alteration in original) (internal citations omitted) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir.

3

2015) (explaining that plaintiff "was required to allege facts to satisfy the elements of a cause of action created by th[e relevant] statute").

B.      Analysis

1.      Count II: FMLA Interference

The FMLA grants employees of covered employers the right to take up "to a total of 12 workweeks of leave during any 12–month period" when, inter alia, an employee is burdened with "a serious health condition that makes the employee unable to perform." 29 U.S.C. § 2612(a)(1)(D). The employee, after returning from FMLA leave, is "entitled to be restored to his previous position or an equivalent position, so long as he would have retained that position or an equivalent one absent the taking of leave." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 426 (4th Cir. 2015) (citing 29 U.S.C. § 2614(a)).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Claims for violations of the prescriptive rights set forth in §§ 2612-2615 are "known as 'interference' or 'entitlement' claims." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006). "To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams, 789 F.3d at 427.

"Right to reinstatement to his or her original position or an equivalent post" is a benefit that an employee is entitled to under the FMLA. Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 301 (4th Cir. 2016).[1] An equivalent position is defined as "one that is virtually identical

---

[1]      Accordingly, denial of reinstatement is properly considered as interference with an employee's FMLA rights. See, e.g., Yashenko, 446 F.3d at 549 (discussing failure to reinstate as a potential interference claim in the context of plaintiff's position being eliminated while he was on leave and his subsequent discharge upon return from leave); Waag v. Sotera Def. Sols., Inc., 857 F.3d 179, 189 (4th Cir. 2017) (discussing plaintiff's claim that he was reinstated

4

to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status" and that involves "the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

However, "the FMLA does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave." <u>Yashenko</u>, 446 F.3d at 547; <u>see also</u> 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."). Yet, even

> [i]f the employee's original worksite has been closed, the employee is entitled to the same rights as if the employee had not been on leave when the worksite closed. For example, if an employer transfers all employees from a closed worksite to a new worksite in a different city, the employee on leave is also entitled to transfer under the same conditions as if he or she had continued to be employed."

29 C.F.R. § 825.215(e)(1).

There is no dispute at this juncture whether plaintiff was entitled to FMLA leave, and, as explained by the court above, such leave comes with the accompanying prescriptive right to be reinstated to the same or equivalent position. <u>Yashenko</u>, 446 F.3d at 549. The facts as alleged by plaintiff permit a reasonable inference that he was not offered the same or equivalent position when he attempted to return from FMLA leave to engage in light duty work,[2] and, instead, he was

---

to a "sham" position in terms of interference); <u>see also</u> <u>Fry v. Rand Constr. Corp.</u>, 964 F.3d 239, 245 (4th Cir. 2020) (suggesting that even "retaliation-for-exercise claims" might fall under [the] subsection (a)(1)" prohibition on interference with FMLA rights). Accordingly, defendant's arguments to the contrary are inapposite.

[2]    The parties have not raised, so the court does not address, the federal regulations regarding the interaction between the FMLA reinstatement requirements and the ADA's reasonable accommodation requirements. <u>See, e.g.</u>, 29 C.F.R. § 825.702(c)(4), (d)(2).

ignored and terminated. (See Compl. ¶¶ 23-28). Plaintiff has also plausibly alleged that he would not would have been discharged had he not taken leave, even in light of the RDU contract not being renewed, because, as alleged by plaintiff, other employees at the RDU worksite that did not take leave were transferred to new worksites. (Compl. ¶ 29-30). Such an alleged violation causes harm to plaintiff in the form of "compensation and benefits lost 'by reason of the violation,'" and would allow for "'appropriate' equitable relief, including employment, reinstatement, and promotion." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (first quoting 29 U.S.C. § 2617(a)(1)(A)(i)(I); then quoting 29 U.S.C. § 2617(a)(1)(B)). Accordingly, at the 12(b)(6) stage, plaintiff has adequately stated a claim for FMLA interference.

Defendant argues based on Fortune v. Gaylor Electric, Inc., No. 1:19 CV 346, 2020 WL 6038295 (W.D.N.C. May 28, 2020), report and recommendation adopted, No. 1:19-CV-00346-MR-WCM, 2020 WL 3638132 (W.D.N.C. July 6, 2020), that a termination is properly considered under the FMLA's retaliation provisions, not its interference provisions. Regardless of plaintiff's alleged termination, however, plaintiff has stated a claim of FMLA interreference where, as here, he alleges his employer interfered with a provision of an FMLA benefit, which reinstatement to a same or similar position plainly is. See 29 U.S.C. § 2614.

Defendant additionally suggests that plaintiff's allegations are analogous to those in Yashenko, where the plaintiff's position was eliminated as part of "legitimate reorganization" and the plaintiff "chose not to apply for any of the numerous open positions, despite suggestions that he apply" from his employer. 446 F.3d at 550. Here, however, plaintiff alleges that despite defendant's contract ending at RDU, RDU-site workers were offered the option transfer to other locations. (Compl. ¶ 29). This takes the alleged factual scenario from the realm of Yashenko and into the situation discussed in the EEOC regulations, where "an employer transfers all employees

6

from a closed worksite to a new worksite in a different city," which still results in the leave-taking employee being "entitled to transfer under the same conditions as if he or she had continued to be employed." 29 C.F.R. § 825.215(e)(1). This does not prevent the defendant from later in the proceedings meeting the "burden of proving that an employee would have been laid off during the FMLA leave period and, therefore, would not be entitled to restoration" even absent his or her taking leave. See id. § 825.216(a)(1).

Therefore, defendant's motion to dismiss insofar as it seeks dismissal of plaintiff's FMLA inference claim, Count II in the complaint, must be denied.

    2.        Count III: ADA Discrimination

        a.        Administrative Remedy Exhaustion[3]

The administrative remedy exhaustion procedures under Title VII have been adopted for ADA claims, see 42 U.S.C. § 12117 (citing 42 U.S.C. § 2000e-5), and require the filing of a charge with the EEOC, Sydnor v. Fairfax County, 681 F.3d 591, 593 (4th Cir. 2012). "The EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) (Title VII[4]). This is because "the goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff could raise claims in litigation that did not appear in his EEOC charge." Sydnor, 681 F.3d at 593. Yet, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." Id. "Documents filed by an

---

[3] As an initial note, the parties describe the charge-filing requirement of the ADA as a jurisdictional prerequisite, which is in conflict with the Supreme Court's recent holding that Title VII's charge-filing requirement is not jurisdictional. See Fort Bend County v. Davis, 139 S. Ct. 1843, 1846 (2019); see also Stewart v. Jones Util. & Contracting Co. Inc., 806 F. App'x 738, 740 (11th Cir. 2020) (describing Title VII and the ADA's exhaustion requirement as "a claims-processing rule, not a jurisdictional prerequisite, and a defendant may waive it as a defense if the issue is not timely raised"). Accordingly, although discussed by the parties under Rule 12(b)(1), which considers subject matter jurisdiction, the court analyzes plaintiff's ADA claims as stated in the complaint under the auspices of Rule 12(b)(6).

[4] It is appropriate to rely on Title VII precedent in analyzing ADA claims. See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) (stating that "courts have routinely used Title VII precedent in ADA cases").

employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008). Accordingly, "discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent [ADA] lawsuit." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); Sydnor, 681 F.3d at 594 (explaining that so long as "a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she "may advance such claims in her subsequent civil suit" (quotation omitted)).

In Sydnor, the Fourth Circuit found this standard was met, noting, first, plaintiff's charge and her formal lawsuit "involved the same place of work and the same actor." Id. The court also noted that the plaintiff described the "same type of discrimination" in her suit and in her charge and did not allege different bases of discrimination in each, such as race in one and sex in the other. Id. Finally, the court found pertinent that "plaintiff's description of her disability did not shift from the administrative to judicial proceedings," that is "her limited walking ability," distinguishing her from litigants who "attempt to avoid the exhaustion requirement by raising new disabilities for the first time in court." Id.

Here, plaintiff's claims in his EEOC charges and in his formal lawsuit are reasonably similar enough to achieve the goal of notice to defendant employers and allowing adequate administrative investigation and resolution. In pertinent part, plaintiff's amended EEOC charge[5]

---

[5] Although plaintiff did not attach his EEOC charges as part of his pleadings and instead they come before the court as an attachment to defendant's motion to dismiss, "courts may consider a document that the defendant attaches to its motion to dismiss if the document 'was integral to and explicitly relied on in the complaint and if the plaintiff[] do[es] not challenge its authenticity.'" CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (quoting CACI Int'l v. St. Paul Fire & Marine Ins. Co., 567 F.Supp.2d 824, 829 (E.D.Va. 2008)). Here, plaintiff's EEOC charges are integral to his complaint, which details his filing with the EEOC, and plaintiff does not challenge their authenticity and, rather, relies on them in arguing against the motion to dismiss.

8

alleges that the discrimination against him was based on retaliation and disability. (Def.'s Mot. Dismiss, Ex. A (DE 9-1) at 3). Specifically, plaintiff stated in the charge that he had surgery for a serious medical condition, took leave, and, when he returned from leave and requested light duty work, was fired. (Id.) Plaintiff in his charge alleges that this was done because of his disability and that other workers received different treatment than he did. (Id.). Plaintiff's complaint claims substantially the same, explicitly alleging "unlawful discrimination and harassment against [p]laintiff due to his disability," and that his "bilateral quadriceps tendon ruptures caus[ed] him to become disabled." (Compl. ¶¶ 2, 17). The complaint more specifically alleges that plaintiff "has an actual disability, has a record of being disabled, and/or is perceived as being disabled" by defendant. (Id. ¶ 18).

Defendant argues that plaintiff failed to exhaust his administrative remedies in regard to his "record of having disability" and "perceived disability" because the EEOC charge, as construed by defendant, only includes a claim of discriminatory discharge in violation of the ADA based on actual disability.

The Court of Appeals for the Fourth Circuit has not explicitly ruled whether a claim in an EEOC charge of actual disability discrimination is reasonably related to a complaint's claims of record of disability and/or perceived disability or whether those claims would be developed by reasonable investigation of a claim of actual disability in an EEOC charge. The court recognizes that federal district courts that have addressed this issue are divided. Compare Kear v. Bd. of Cty. Comm'rs, 491 F. Supp. 2d 1052, 1055-56 (D. Kan. 2007) (holding plaintiff failed to exhaust "regarded as" and "record of" claim where EEOC charge stated only that "I am disabled"), with Dyer v. Wiregrass Hospice, L.L.C., 532 F. Supp. 2d 933, 936 (M.D. Tenn. 2008) ("The scope of an EEOC charge alleging disability discrimination extends to 'regarded as' claims in addition to

actual disability claims."); and Cooper v. Rappahannock Shenandoah Warren Reg'l Jail Auth., No. 5:17-CV-00079, 2017 WL 4933050, at *5 (W.D. Va. Oct. 31, 2017) ("[Defendant's] argument that [plaintiff] cannot plead a 'regarded as' claim because the EEOC Charge stated he had an impairment [does not] hold water.").

Even assuming that plaintiff's claim of record disability or perceived disability is a new and different claim in his complaint, the court finds that such claim would be both "reasonably related" to the EEOC charge's allegation of actual disability and would be "expected to follow" from a reasonable administrative investigation into the claim of actual disability discrimination. Sydnor, 681 F.3d at 594; see Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 189 (3d Cir. 1999) ("The possibility that a plaintiff will bring both an actual disability and a 'regarded as' claim is simply one allowed by law.").

The allegation of disability discrimination in plaintiff's EEOC charge is broad enough to encompass all three theories of disability discrimination and is different than alleging only discriminatory conduct in an EEOC charge and then bringing a claim of retaliation in the complaint. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005) (Title VII) ("[Plaintiff] did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation."); Bryant, 288 F.3d at 133 ("Administrative investigation of retaliation . . . could not reasonably be expected to occur in light of [plaintiff's] sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination.").

In summary, as a matter of the ADA's mandatory processing rule on filing a charge, plaintiff has adequately alleged that he exhausted administrative remedies regarding his claims of disability discrimination, inclusive of claims of actual disability, record of disability, and perceived

10

disability. Accordingly, the court denies defendant's motion as far as it is premised on failure-to-exhaust grounds.

### b. Substantive ADA Discrimination Claim

"The ADA protects an employee against discrimination by an employer if the employee is 'a qualified individual with a disability.'" Pollard v. High's of Balt., Inc., 281 F.3d 462, 467 (4th Cir. 2002) (quoting 42 U.S.C. §§ 12111(2), 12112(a)). For example, an employer illegally discriminates based on disability if they wrongfully discharge a qualified employee based on that disability. 42 U.S.C. § 12112(a); see Haulbrook v. Michelin N. Am., 252 F.3d 696, 702 (4th Cir. 2001). An employer may also unlawfully discriminate against an employee under the ADA by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A).

Either type of discrimination claim is premised on the employee showing "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability," Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted), meaning that the determination of whether an employee is disabled within the meaning of the ADA is a threshold question to that employee's ADA discrimination claim, see Pollard, 281 F.3d at 467 ("[I]n order to come within the ADA's protected class, a plaintiff must first show that she is disabled within the meaning of the Act.").

A disability under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual" (actual disability); "(B) a record of such an impairment" (record of disability); or "(C) being regarded as having such

an impairment" (perceived disability). See 42 U.S.C. § 12102(1). A substantially limiting impairment is one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). However, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. § 1630.2(j)(1)(ii). Statutorily enumerated examples of "major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 42 U.S.C. § 12102(2)(A).

Plaintiffs may proceed in the alternative arguing disability under all three prongs of the definition of disability. See, e.g., Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 236-38 (4th Cir. 2016); see also 29 C.F.R. § 1630.2(g)(2) ("An individual may establish coverage under any one or more of these three prongs of the definition of disability.").

As a preliminary issue upon which plaintiff's substantive claims depend, the parties contest whether plaintiff has adequately alleged that he is disabled within the meaning of the ADA.

i. Actual Disability

"A plaintiff is [actually] disabled if he can show '(1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial.'" Wicomico Nursing Home, 910 F.3d at 751 (quoting Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 254 (4th Cir. 2006)).

Defendant contends that plaintiff has failed to allege sufficient facts to plead a claim based on actual disability. The court agrees, finding that although plaintiff has properly pled facts indicating a physical impairment, see Summers v. Altarum Inst., Corp., 740 F.3d 325, 332 (4th Cir. 2014) (explaining that nothing in the EEOC regulations "suggest[s] that an 'injury' cannot be

12

an 'impairment'" and that the regulations' expansive definition of impairment "surely includes broken bones and torn tendons"), he has failed to allege facts or details for the court to infer his physical impairment limited a major life activity and did so in a substantial way.

Plaintiff alleges that he "suffered bilateral quadriceps tendon ruptures" and, shortly thereafter, took approved FMLA leave. (Compl. ¶ 17). Plaintiff provides no additional facts regarding the nature of his injury except that four months after, his orthopedic doctor released him to return to work with light duty restrictions.[6] Plaintiff fails to allege how his injury affected any specific major life activity, let alone how that limitation is substantial. See, e.g., 29 C.F.R. § 1630.2(j)(4) (laying out a number of considerations under the substantially limited inquiry including "difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed").

Plaintiff's bare assertions, without supporting facts, that his injury disabled him and that he is disabled within the meaning of the ADA are not adequate, as they are merely legal conclusions. See Nemet Chevrolet, 591 F.3d at 255; see also Wicomico Nursing Home, 910 F.3d at 751 (explaining that the allegation that plaintiffs are "qualified individuals with a disability" is inadequate when "[t]his conclusory phrase is the sum total of the Complaint's allegations addressing the elements of an ADA claim").

Accordingly, the complaint has not alleged sufficient facts supporting plaintiff's claim of actual disability.

ii.     Record of Disability

A plaintiff has a record of disability where he or she has "a history of, or has been misclassified as having, a . . . physical impairment that substantially limits one or more major life

---

[6]     This stands in stark contrast with more detailed allegations like that a severe injury prevented him from walking for at least seven months. See Summers, 740 F.3d at 333.

activities." Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 153 (4th Cir. 2012) (quotation omitted).

Just as plaintiff has failed to allege facts regarding how his impairment substantially limited one or more major life activities, plaintiff has failed to allege facts or indicate that defendant or any of its employees knew, had records, or had misclassified plaintiff as having a physical impairment that substantially limits one or more major life activities. Plaintiff's request for FMLA leave would not result in a record of an ADA cognizable disability by his employer given the distinct definitions under each act. See 29 C.F.R. § 825.702(b) ("ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately."). Nor does plaintiff's allegation that he inquired into disability benefits sufficiently support a claim of record of disability as it again fails to indicate what his employer knew or had recorded regarding his physical impairment's limitation on major life activities.

Finally, plaintiff's allegation of an email to a human resources department employee regarding restrictions and ability to do light duty work too fails to include the factual specificity necessary to state a claim for record of disability. The fact that an employee can engage in work, which is an enumerated major life activity, see 42 U.S.C. § 12102, under light duty restrictions, without more detail, does not adequately allege that an impairment "substantially limits the ability of [the employee] to perform a major life activity as compared to most people in the general population." 29 C.F.R. §1630.2(j)(ii); see also Rakity v. Dillon Cos., Inc., 302 F.3d 1152, 1161 (10th Cir. 2002) ("[A] history of light duty restrictions does not necessarily demonstrate a record of substantial limitation in working.").

While at this early stage of litigation plaintiff is not required to know and allege every detail of an employer's records and the facts known to relevant decisionmakers, plaintiff must still

14

allege some facts supporting that a history or misclassification of him having an impairment that substantially limits one or more major life activity exists. Here, plaintiff has not done so, and therefore, he has failed to adequately allege he had a record of disability.

### iii.    Perceived Disability

"An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under" the ADA "because of . . . perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); see also 29 C.F.R. § 1630.2(g)(3) (explaining that this prong "does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment"). If an individual's impairment has an "actual or expected duration of 6 months or less," it is considered "transitory and minor" and will not constitute disability under the regarded as prong. See 42 U.S.C. § 12102(3)(B); see also Summers, 740 F.3d at 329 n.1; but see also Miller v. Maryland Dep't of Nat. Res., 813 F. App'x 869, 876 (4th Cir. 2020) ("[A] plaintiff need not overcome the 'transitory and minor' hurdle at the motion to dismiss stage."). "[T]he analysis 'focuses on the reactions and perceptions of the [employer's] decisionmakers' who worked with the employee." Wilson v. Phoenix Specialty Mfg. Co., 513 F.3d 378, 385 (4th Cir. 2008) (alteration in original) (quoting Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 172–73 (4th Cir. 1997)). Finally, "[t]he fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" Haulbrook, 252 F.3d at 703 (quoting Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996)).

15

For much the same reasons that plaintiff has failed to allege a sufficient factual basis for actual disability or record of disability, he has failed to properly allege that he was perceived as disabled within the meaning of the ADA.

Plaintiff claims that defendant was "placed on notice of [p]laintiff's disability . . . when [p]laintiff called" his manager, an alleged employee of defendant, and "inquired about FMLA leave." (Resp. Opp. Mot. Dismiss (DE 12) 7-8). As discussed previously, the request for FMLA leave, without more, does not per se result in a determination that a plaintiff is actually disabled, that the employer has a record that a plaintiff is disabled, or that the employer perceives the plaintiff as disabled, due to the distinct definitions used by each statutory scheme. Further details of plaintiff's conversation with his manager could reasonably give rise to an inference that defendant perceived, mistaken or otherwise, that plaintiff had an impairment that substantially limits a major life activity; however, no such details are given in the complaint.

Plaintiff's allegations that he notified human resources department employees that he had been released to work with light duty restrictions and that he inquired about disability benefits both fail to sufficiently state a claim that he was perceived as having a physical or mental impairment that limits a major life activity. Plaintiff has not alleged anything regarding defendant's perception of his ability to engage in major life activities, like work, or facts that lead to reasonable inferences that defendant perceived him to be substantially limited in any major life activities. The court cannot allow plaintiff's claim to proceed upon the mere speculation that plaintiff's interactions led defendant to perceive him as disabled; plaintiff is required to "allege facts sufficient to state all the elements of [his] claim." Wicomico Nursing Home, 910 F.3d at 751.

In summary, plaintiff has failed to adequately allege that he was disabled within the meaning of the ADA under all three prongs of the ADA's definition of such. Accordingly, he has

16

failed to state a claim of ADA discrimination, and the court must grant defendant's motion to dismiss Count III. The court dismisses plaintiff's claim of ADA discrimination without prejudice.

      3.      Count IV: ADA Retaliation

In addition to prohibiting discrimination against qualified individuals on the basis of disability, "[t]he ADA also prohibits retaliation against employees who seek the Act's statutory protections." Laird v. Fairfax County, __ F.3d __, 2020 WL 6228005, at *3 (4th Cir. Oct. 23, 2020) (citing 42 U.S.C. § 12203(a)-(b)). To prove a claim of retaliation under the ADA, a plaintiff must show that "(1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action." Id. at *3 n.4.

      a.      Protected Conduct

The enumerated examples of protected conduct under the ADA include opposing an act or practice made unlawful by the ADA and making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under the ADA. 42 U.S.C. § 12203(a). A plaintiff "clearly engage[s] in protected activity by submitting a request for accommodation" when he or she is "disabled within the meaning of the ADA." See Jacobs, 780 F.3d at 577. Reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability . . . to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii), and may include "job restructuring" and "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B).

However, the Fourth Circuit has not squarely decided whether a plaintiff's failure to show he or she is disabled within the meaning of the ADA causes requesting an accommodation to

Case 5:20-cv-00190-FL   Document 16   Filed 12/22/20   Page 17 of 21

become an unprotected activity.  See Haulbrook, 252 F.3d at 706 (assuming without further discussion that plaintiff's "request for accommodation" was a protected activity even though the court found that his employer did not regard him as disabled, which was his sole theory of disability); but see also 29 C.F.R. 1630.2(o)(4) ("A covered entity . . . is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the 'regard as' prong.").  Other circuits have found that such a request is still protected even if the plaintiff is not disabled, see, e.g., Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 759 n.2 (3d Cir. 2004) ("[A]n ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA . . . ."), superseded by statute on other grounds, ADA Amendments Act of 2008, Pub. L. No. 110-325, § 6, 122 Stat. 3553, 3558 (2008), as recognized in Robinson v. First State Cmty. Action Agency, 920 F.3d 182, 188 n.30 (3d Cir. 2019); Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001); Standard v. A.B.E.L Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998).  And they have done so relying on a "good faith belief" rationale, similar to the Fourth Circuit's analysis of oppositional retaliation where the opposed employer conduct did not actually violate the ADA.  Compare, e.g., Reynolds, 701 F.3d at 154 ("[A] plaintiff is not required to prove the conduct he opposed was actually an ADA violation.  Rather, he must show he had a 'good faith belief' the conduct violated the ADA." (quoting Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002))), with Williams, 380 F.3d at 759 n.2 ([A] plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation . . . .").

In sum, assuming, without deciding, that plaintiff's request to return to work with light duty restrictions was a request for a reasonable accommodation that would allow him to perform

18

the essential functions of that position, such a request may be considered protected activity even though plaintiff has failed to adequately allege that he was disabled under the ADA.

        b.     Causal Link

Section 12203(a) contains a causal requirement in its text, prohibiting "discriminat[ion] against any individual because such individual" has engaged in protected activity. 42 U.S.C. § 12203(a) (emphasis added). Accordingly, courts have required "a causal link between the protected conduct and the adverse action," as the third element of an ADA retaliation claim. See, e.g., Laird at *3 n.4. In the absence of direct evidence of causation, "the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998).

In addition, "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." Id. By contrast, in some cases, "that [a] termination came so close upon [a] filing of [a] complaint gives rise to a sufficient inference of causation to satisfy the prima facie requirement." King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003); see also Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (explaining that a court may find "a causal connection between a plaintiff's protected activity and her discharge where the employer, with knowledge of a pending discrimination complaint, fired plaintiff approximately four months after the complaint was filed" (emphasis added)).

"[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." McCleary-Evans, 780 F.3d at 585 (quotations omitted). "For instance, if a

plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." Id. at 584-585 (quotations omitted).

For example, in Miller v. Maryland Department of Natural Resources, 813 F. App'x 869 (4th Cir. 2020) (per curiam), the Fourth Circuit explained that although plaintiff "failed to allege knowledge on the part of a decision maker," plaintiff sufficiently alleged causation through allegations of termination "one day short of four weeks after his last accommodation request," where "supervisors were aware of his need for accommodations but denied them," and where "[a]fter they became aware of [a]ppellant's injury, his supervisors began falsely accusing him of drug use and cheating after he expressed a need for accommodations." Id. at 878-79.

Here, plaintiff alleges that "soon after he was cleared to return to work," which appears to be September 2019 based on other portions of his complaint, "[d]efendant terminated him effective October 1, 2019." (Compl. ¶¶ 22, 28). Reading this allegation in conjunction with plaintiff's allegation that around the time he was cleared by his doctor to return to work, September 2019, he notified the human resources department that he had been "released to with work with light duty restrictions," supported by an accompanying "doctor's note listing his restrictions," (Compl. ¶ 23), the court can reasonably infer that within a month of allegedly receiving plaintiff's request for accommodation, defendant terminated him. However, this is the extent of plaintiff's factual allegations regarding causation. He does not provide additional facts, in contrast to the complaint in Miller, to raise the reasonable inference that, not only was his termination close in time to his email to the human resources department notifying them of his light duty restrictions, it was motivated by such. Per Miller's example, although plaintiff is not required specifically to allege knowledge on the part of a decisionmaker, he is still required to allege facts that raise his right to

relief above a speculative level, and such bare allegations, on their own, fail to raise an inference of causation.

In sum, plaintiff has failed to adequately state a claim for ADA retaliation based on the facts in his complaint. Accordingly, the court grants defendant's motion to dismiss Count IV of the complaint and dismisses plaintiff's ADA retaliation claim without prejudice.

## CONCLUSION

Based on the foregoing, the defendant's partial motion to dismiss (DE 7) is GRANTED IN PART and DENIED IN PART. Plaintiff's ADA discrimination and retaliation claims are DISMISSED WITHOUT PREJUDICE. Plaintiff's remaining claims are ALLOWED TO PROCEED. The court LIFTS the stay imposed in the court's August 3, 2020, order, and the parties shall, within 14 days of this order, confer regarding a discovery plan, and then file a proposed discovery plan and exchange mandatory initial disclosures both within 14 days after the 26(f) conference.

SO ORDERED, this the 22nd day of December, 2020.

LOUISE W. FLANAGAN
United States District Judge